IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Division of the Trial Court

JOHN QUINLAN
                Plaintiff,

v.

QUAD GRAPHICS INC.

        Defendants.

Civil Action Number: 20-CV-11593-RWZ

## PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO CHANGE VENUE

"unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum

should rarely be disturbed." W.R. Grace & Co., 407 Mass. 572 at 578 (1990).

At issue in this litigation is whether Quinlan, a Massachusetts based employee of Quad's

Massachusetts location, is bound, under Massachusetts law,  by restrictive covenants he signed in

Massachusetts governing a previous job he had with the Massachusetts based employer, or whether

he is free to pursue employment in Massachusetts. Defendants, after seeking to prevent the

Plaintiff's employment in Massachusetts, now seek to transfer venue to Wisconsin, which has no

connection to the litigation.

Plaintiff asks the Court to retain the case here in Massachusetts or to remand to

Massachusetts Superior Court.

## THE FORUM SELECTION CLAUSE IS NOT ENFORCEABLE IN THIS CASE

**Point One:** the entire contract was voided by materially altering Mr. Quinlan's position.

Defendant's Memorandum page 2 notes that Mr. Quinlan was hired as a Regional Sales Manager

and had a "starting base salary of $125,000/year." Defendant's Affidavit of Matt Shuma states that

1

some six years later, at the time of termination, Mr. Quinlan's "base salary was $97,500." (¶18). This assertion is contradicted by the Complaint at ¶11, indicating Mr. Quinlan was on a 100% commission plan. Mr. Shuma's declaration is deliberately (and misleadingly) silent on the job title of Mr. Quinlan at any other time. Mr. Quinlan's title, duties, and compensation changed in 2017 to those of a "sales employee." Compl. ¶10. Defendant further altered the arraignment by reducing commissions. *Id.* 12. And the structure was lowered again in 2018 by changing the basis of calculation for commissions. *Id.* ¶13.

Courts have held similar changes to void employment contracts. "It is well-settled under Massachusetts law that each time an employee's employment relationship with the employer changes materially such that they have entered into a new employment relationship, a new restrictive covenant must be signed." *Iron Mountain,* 455 F.Sup.2d at 132–33. "[F]ar reaching changes [in an employment relationship] strongly suggest that the parties had abandoned their old arrangement and had entered into a new relationship." *F.A. Bartlett Tree Experts v. Barrington,* 353 Mass. 585, 587–88 (1968). Relying on *F.A. Bartlett,* several Superior Court decisions have reached the same conclusion. See *Lycos, Inc. v. Jackson,* 18 Mass. L. Rptr. 256, 2004 WL 2341335, at 3-4 (Mass.Super.Ct., 2004) (Houston, J.); *Cypress Group, Inc. v. Stride & Assocs., Inc.,* 17 Mass. L. Rptr. 436, 2004 WL 616302 (Mass.Super.Ct. 2004) (Burnes, J.); *Intertek Testing Servs. N.A., Inc. v. Curtis Strauss, LLC,* 2000 WL 1473126 at *6 (Mass.Super.Ct. 2000) (Gants, J.). See also *ABC Cable Sys., Inc. v. Clisham,* 62 F.Sup.2d 167, 173 (D.Mass.1999) (applying Massachusetts law). "Massachusetts courts have consistently refused to grant injunctive relief or otherwise enforce restrictive covenants where such covenants were entered prior to changes in the employment relationship." *Iron Mountain,* 455 F.Sup.2d at 133, citing *Lycos, Inc.,* 2004 Mass.Super. LEXIS 348, at *10.

Courts have similarly held where sales agreements and pay structures were altered, the employee was released from the restrictive covenant. See, e.g., *Lantor Inc. v. Ellis Neptco, Inc., No*, No. 98-01064 (Mass. Cmmw. 1998) stating "find that Lantor committed a material breach of its employment agreement with Ellis in 1996 when it unilaterally changed the terms of employment by imposing a new bonus scheme and reserving the right to modify this and any future bonus scheme without limitation. … As a result of Lantor's material breach of the employment agreement in 1996, Ellis was discharged from his obligations under that agreement, including his obligation not to compete with Lantor after leaving its employ." (emphasis added).  A similar holding and result occurred in *Karns v. Folio Exhibits, Inc., No*, No. 020367 (Mass. Cmmw.  2002) "There is a likelihood that the moving party will not be successful after a full hearing on the merits. The counterclaim defendant contends that Folio breached their agreement first by announcing a unilateral change in the commission structure by not only reducing the commission rate but also imposing a sales quota, contrary to the letter agreement, his understanding, and his intent regarding his employment with Folio being conditioned upon his receipt of a flat guaranteed commission rate without being subject to a sales quota, thus excusing him from his obligations under the contract."

In addition to the demotion, the Defendants have continually altered the compensation structure and plans available to the Plaintiff. The commissions were reworked no less than three times in the past three years, two of which were very clear cuts of 2% *each*. These unilateral changes would have required the signing of or reaffirmation of the restrictive covenants. Presumably, the reason Quad declined to do so was because of the adoption of G.L. c. 149 §24L by the Massachusetts legislature, which would require Quad to adhere to the provisions of the law.

Notably, there are financial requirements, but more importantly, an employee terminated without cause cannot be held to a restrictive covenant.

**Point Two:**   the forum cause is a special contract voided by the prohibition against special contracts in the Massachusetts Wage and Hour Law, G.L. c. 149 §148. The relevant portion of the statute reads, "No person shall by a special contract with an employee or by any other means exempt himself from this section." G.L. c. 149, § 148. Defendant does not seek to dismiss the wage and hour claim on the merits.

**Point Three:** the forum selection clause is unenforceable as a contract of adhesion. Quinlan, as alleged in the Complaint, had neither the opportunity nor the bargaining power to negotiate over whether Wisconsin or Massachusetts would be the proper forum that would govern his non-competition, non-solicitation, and confidentiality agreements. Massachusetts's general rule is that contracts of adhesion "are enforceable unless they are unconscionable, offend public policy, or are shown to be unfair in the particular circumstances," *McInnes v. LPL Fin., LLC*, 466 Mass. 256, 266 (2013), quoting Miller v. Cotter, 448 Mass. 671, 684 n.16 (2007). Quinlan signed this agreement without the opportunity to review with counsel. Defendants do not contest that Quinlan's wages, title, and responsibility changed tremendously between execution and termination. G.L. c. 149 §24L states an explicit public policy against enforcement of non-competition agreements in this fact patter. And in particular, the forum selection clause will meaningfully deny Mr. Quinlan a cost-effective trial and ability to subpoena in witnesses as all witnesses are here in Massachusetts.

## **The Court should deny the motion based on Plaintiff's Selection of Forum and Forum Non-Conveniens.**

"Where in a broad sense the ends of justice strongly indicate that the controversy may be more suitably tried elsewhere, then jurisdiction should be declined and the parties relegated to relief to be sought in another forum." *Gianocostas v. Interface Group-Mass., Inc.,* 450 Mass. 715,  at 723.

The SJC clarified Massachusetts law concerning choice of forum clauses in employment agreements in *Oxford Global Resources, LLC v. Hernandez* 480 Mass. 462 (2018). The Court ruled that such a clause could, at most,

> "waive the employee's 'objection to the forum based on the inconvenience of the forum to him.' It could not, however, waive the employee's ability to object to the forum based on other factors, such as the convenience to witnesses and the desirability of having a particular state's courts apply that state's law to a dispute. Because 'everything relevant to [the] case happened in California,' 'all relevant witnesses [were] located in California,' and the courts of California had an interest in seeing that California law was correctly applied to the dispute, the SJC held that a California court was a more appropriate forum for the litigation than a Massachusetts court.
> *Oxford Global Resources, LLC v. Hernandez* syllabus, 472-478.

The Court specifically considered two sets of factors in evaluating whether or not to give weight to a forum selection clause or dismiss for forum non conveniens, public factors, and private factors. Public factors include administrative burdens to the Court, such as coordinating witnesses from different jurisdictions, and burdens to the desirability of the trial of a case that is at home with the governing law, as the Federal Courts of Massachusetts are whereas the Federal Courts of Wisconsin would not be. Private concerns, in this case, stronger, however. The Court considers such concerns as "practical problems that do or do not make a trial easy, expeditious, and inexpensive, such as the ease of access to proof, the availability of compulsory process, and the cost of attendance of witnesses." *Id.* at 472.

Massachusetts is the better location for this action. First, the matter is governed by Massachusetts Law. Second, all relevant witnesses are in Massachusetts; the Plaintiff lives and worked here at the Defendant's location. The Plaintiff's supervisor lives and works in Massachusetts, the Plaintiff was terminated in Massachusetts, the contract was signed in Massachusetts, and the client and its workers referred to in the Defendant's Declaration are headquartered here in Massachusetts. Next, having all the relevant witnesses testify in Wisconsin will not be inexpensive, not even possible as compulsory process will not be available in Wisconsin for the myriad of Massachusetts workers the Defendant has terminated and will continue to terminate during the pendency of this action.

**The Bremen Factors Favor Massachusetts.**

As cited by the Defendant, the Bremen Factors are: (1) if the forum selection clause is the product of fraud or overreaching; (2) if enforcement would be unreasonable and unjust; (3) if litigation in the selected forum would be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in Court; or (4) if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision. Factor (1) is adequately discussed in point three of A concerning contracts of adhesion under Massachusetts Law. Factor (3) concerning the expense of litigation is discussed with the *Oxford* analysis above.

Factor (2), whether enforcement would be unreasonable or unjust, is entirely on point. The Defendant unceremoniously terminated the Plaintiff without cause. Defendant's temerity in defending their grotesque position is awe-inspiring; its behavior is disgusting, and; everyone involved ought to be ashamed. This large publicly traded corporation with twenty-one thousand employees threatens enforcement of a an invalid non-compete clause to prevent the Plaintiff from

obtaining gainful employment in his chosen field. The contract was initially presented to the Plaintiff on his first day of work in a stack of paperwork they threw at the Plaintiff.

Defendants then seek to engage in dilatory and vexatious litigation practices in an effort to make litigation so prohibitively expensive Plaintiff, now unemployed, is forced to back down. Or they may plan to delay the matter to the point that the Plaintiff's skills and connections are too stale to obtain gainful employment.

Point (4) relates directly to G.L. c. 149 §24L, which would invalidate this agreement, most readily relative to Plaintiff's termination. Massachusetts has a strongly stated public policy against employers engaging in abusive non-competition agreements.

## **The Personnel Statute in Massachusetts claim must be brought in Massachusetts**

Unlike the wage claim, which is largely derivative of the contract, the Plaintiff's claim for the personnel file is brought entirely independent of the employment agreement and based on substantive Massachusetts Law. In *Kessler v. Cambridge Health Alliance*, 62 Mass. App. Ct. 589 (2004), the employee was entitled to seek a judicial determination whether documents in possession of his former employer constituted part of, and were required to be physically included in, his personnel file and that the employee's remedy for violation of the statute was limited to the opportunity to comment, correct, or expunge incorrect or false information contained in his personnel files. Defendants are essentially asserting that is promising to provide the complete personnel file, but failing to do so, that they can deny Mr. Quinlan the right to receive all substantive documents related to his employment and to exercise appropriate remedies. Notably, since the personnel file will be introduced as evidence, in this case, the ability to receive and respond is relatively important.

## **Conclusion**

The Plaintiff worked in Massachusetts for a Massachusetts Employer and signed a contract in Massachusetts governed by Massachusetts law. Defendant asserts no connection to Wisconsin. Witnesses from the Plaintiff, Defense, and all third parties will be in Massachusetts. Massachusetts Law will govern, which the District of Massachusetts or Massachusetts Courts are able to accommodate with less administrative burden. Defendants efforts to remove to Wisconsin are transparent attempts to raise the cost of litigation and delay Mr. Quinlan's employment. The Court should give no moment to such tactics and motives. Plaintiff states the clause is unenforceable, the forum here is proper, and that the Bremen factors favor retaining jurisdiction here.

Dated: Friday, September 25, 2020          Respectfully submitted,
                                          Plaintiff
                                          John Quinlan


                                          /s/ John L. Fink

                                          John Fink BBO 683290
                                          SIMS & SIMS, LLP
                                          53 Arlington Street
                                          Brockton, MA 02301
                                          Tel. (508) 588-6900
                                          Fax (508) 586-3320
                                          E: johnfink@simsandsimsllp.com

## <u>CERTIFICATE OF SERVICE</u>

I, John L. Fink, hereby certify that on Friday, September 25, 2020, I caused the foregoing document to be electronically filed with the United States District Court for the District of Massachusetts through the CM/ECF system. I also certify that on Friday, September 25, 2020, a copy of the foregoing document (and accompanying exhibits) is being served on all counsel of record on the attached service list in the manner specified, either via transmission of the Notice of Electronic Filing (NEF) generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are indicated as non-registered participants who are not authorized to receive NEFs.

/s/ John L. Fink
John L. Fink, Esq.